IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GEORGE LEMM, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV254 |
| | ) | |
| v. | ) | |
| | ) | |
| OMNI ENGINEERING, INC., | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment, Filing No. 19, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a complaint under the Americans With Disabilities Act, 42 U.S.C. § 12111 et. seq. (ADA), and by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5. The court has carefully reviewed the record, the arguments of counsel, and the relevant caselaw. The court concludes that the motion for summary judgment should be granted.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the non-existence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an

issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 830 (8th Cir. 2001). In passing on a motion for summary judgment,

it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**BACKGROUND**

Defendant employed plaintiff from August 5, 2002, until May 26, 2004, as a serviceman mechanic. The job description for the position requires an employee to operate and maintain trucks, trailers, loaders, rollers, pavers, and backhoes. An employee might have to drive as many as ten to twenty dump trucks per night. An employee in this position must also be able to sit, stand, walk, push, pull, climb, bend, twist and stoop. He must also be able to do repetitive lifting of up to 150 pounds. Filing No. 21, at 13.

Plaintiff had a heart pacemaker installed in 1998 and received a second one in 2002. In May, 2003, plaintiff woke up during his work shift outside of the cab of his truck. Plaintiff told his supervisor, Dennis Boggs, that he was fine. Plaintiff went to his doctor who then switched plaintiff's medications and placed him on a six month driving restriction.[1] In May, 2004, while at work, defendant fell to his knees. A rescue squad was called, but plaintiff refused treatment. Defendant terminated plaintiff on May 26, 2004, finding that plaintiff presented a risk to himself and to others when performing his job. Plaintiff then worked for two or three new employers before starting his own truck repair business.

---

[1] Defendant argues that plaintiff did not follow this restriction, while plaintiff contends that his direct supervisor instructed plaintiff to resume driving prior to the end of the six month period. The court finds this dispute is not particularly relevant to the outcome of the case, given the fact that plaintiff continued to work until May, 2004.

3

Defendant states that plaintiff did not ever advise of his heart condition, request an accommodation, or advise of any medical restrictions.  Defendant contends that plaintiff did not ask for accommodations at any of these subsequent jobs either.

Plaintiff also argues that (1) defendant refused to give him insurance coverage; (2) defendant did not allow him to complete the six month no driving accommodation; and (3) he could perform the essential functions of the job while the driving restriction was in place. Defendant points out that plaintiff did not receive company insurance, not because of a disability, but because he failed to apply during the open enrollment period.[2] Defendant also argues that plaintiff did not ask for any driving accommodation and, in any event, defendant contends that driving the trucks is an essential part of this job.

**DISCUSSION**

Plaintiff has filed a complaint under the ADA.  Defendant contends that plaintiff is unable to make out a prima facie case of discrimination under the ADA.  The burden is on the plaintiff to show that (1) he was disabled within the meaning of the ADA; (2) he was qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) he suffered adverse employment action because of the alleged disability.  *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996).  Summary judgment is proper if plaintiff fails to establish these claims.  *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998).  The burden then shifts to the defendant to articulate a legitimate reason for its decision to refuse to allow plaintiff to continue his position, and if the defendant is

---

[2]Plaintiff admitted he received a letter from the defendant telling him the date the open enrollment would end.  The court notes at the outset that there is no evidence that plaintiff applied for insurance nor that the defendant refused such coverage.

4

able to meet this burden, then the plaintiff must demonstrate that discrimination was the real reason for the employment decision. *Nesser*, 160 F.3d at 445.

Plaintiff first argues that defendant discriminated against him because of (1) an actual disability, (2) or in the alternative, the defendant regarded him as having a disability, (3) or because the plaintiff had a record of a disability. Plaintiff's second cause of action alleges that defendant failed to offer reasonable accommodations to the plaintiff.

**1. Disabled Person Under the ADA**

There are three ways a person can be disabled under the ADA: "actually," "record of," or "regarded as" disability. Under the "actually" disabled criterion, plaintiff must show that he has an impairment that substantially limits a major life activity. *Miller v. City of Springfield,* 146 F.3d 612, 614 (8th Cir. 1998); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999); *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997).

Plaintiff argues that as a matter of law, he is a disabled person under the ADA. Specifically, plaintiff contends that he has heart disease. He now also argues that he had lifting limitations and some trouble walking. However, plaintiff testified that he did not ever present any lifting restriction to the defendant. Filing No. 21, Lemm Dep. 105:18-20. Defendant argues that plaintiff does not have a disability within the meaning of the ADA, as moderate limitations that result from heart disease are not necessarily a disability. *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000). Defendant also notes that plaintiff walked up to 1000 feet each shift and climbed twelve to fourteen stairs.

According to the ADA, a disability is "a physical or mental impairment that substantially . . . limits one or more of the plaintiff's major life activities." *See* 42 U.S.C. § 12102(2)(A)-(C). The ADA concerns itself with limitations that are substantial in nature.

5

*Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999). "Major life activities" have been defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F. R. § 1630.2(i); *Aucutt v. Six Flags over Mid-America, Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 361 (8th Cir. 1997). "To 'substantially limit' a major life activity means to render an individual unable to perform a basic function that the average person in the general population can perform," or to "significantly restrict as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to. . . an average person in the general population. . . ."[3]  29 C.F.R. § 1630.2(j)(ii). *See Samuels v. Kansas City Missouri School*, 437 F.3d 797, 801 (8th Cir. 2006). Both the severity and the duration of an impairment are factors to consider in order to determine if an impairment substantially limits a major life activity. *See Aucutt,* 85 F.3d at 1319. The court agrees with the defendant. Plaintiff has not shown that he is disabled within the meaning of the ADA. The court finds no evidence in the record of an inability to perform a major life activity nor does the court find evidence in the record of a lifting limitation on plaintiff. The court finds plaintiff is not actually disabled under the ADA.

In the alternative, plaintiff says that the company regarded him as disabled. Defendant agrees that plaintiff has a heart condition. However, defendant contends that this condition is not disabling. "It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." *Wenzel v. Missour-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005)

---

[3] The following factors are considered in determining whether a person is substantially limited in a major life activity: "(1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its long-term impact." *Snow v. Ridgeview Med'l Ctr.*, 128 F.3d 1201, 1206-07 (8th Cir. 1997).

(citation omitted). There is no showing by the plaintiff that defendant perceived the impairment and considered it to be substantially limiting of a major life activity. *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir. 1995). Plaintiff may not be suited for the job of driving trucks, but that does not mean he is disabled.

In the alternative, plaintiff says that the company had a record of his disability. There is no evidence that has been submitted to the court in this case to support such an argument. "In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities." *Weber v. Strippit, Inc.,* 186 F.3d at 915 (8th Cir. 1999) (citing 29 C.F.R. § 1630.2(k)). In order for the plaintiff to show a record of disability, he must establish that his past record of impairments substantially limited at least one major life activity. *Land v. Baptist Med Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999). As previously stated, plaintiff's deposition testimony establishes that he was not impaired in other life activities. Plaintiff admitted that he can fish, baby-sit, go to sports events and movies, go out to dinner, remodel his house, and do car maintenance. Plaintiff also contends that his walking is limited. The evidence that plaintiff walked up to 1000 feet and climbed twelve to fourteen steps while working for the defendant does not support plaintiff's allegations regarding walking limitations. In addition, no evidence has been presented that this plaintiff had a record of impairment that substantially limited a major life function. 29 C.F.R. § 1630.2(k) and (l). I find that plaintiff has not established a record of disability. No evidence exists that indicates defendant ever saw medical records of or any other records that would indicate a disability existed. *See Costello v. Mitchell Public School Dist.*, 266 F.3d 916, 924 (8th Cir. 2001) (records did not

7

show a substantially limiting impairment, so no genuine issue of fact and summary judgment properly granted).

There is no evidence that plaintiff ever advised defendant of his heart condition. There is no evidence, and plaintiff admits, that he ever asked for an accommodation. Filing No. 21, Lemm Dep. 37:7-10. Other than the one six month driving restriction, there is no evidence that he ever advised defendant of medical restrictions. *Id.* at 53:23-54:8. With regard to this driving restriction, defendant kept plaintiff on during that restriction and into the next year. Accordingly, this court concludes that there is no evidence in this record that would support a finding of disability in this case. Defendant has shown that plaintiff was discharged for safety concerns. However, for purposes of the record, the court will address the remaining two elements, as though plaintiff had a disability.

### 2. Qualified Individual Under the ADA

Plaintiff argues that as a matter of law he could perform the essential functions of the job. In the alternative, plaintiff argues that there is a genuine issue of material fact as to whether defendant offered him reasonable accommodations to perform the job. In response, defendant contends that plaintiff was unable to perform the essential functions of the job and that he never requested accommodations.

Under the ADA, a "qualified individual" is an individual who, "with or without reasonable accommodation, can perform the essential functions[4] of the employment

---

[4] The EEOC guidelines define essential functions as:

(1)      In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position. . . .

(3)      Evidence of whether a particular function is essential includes, but is not limited to:
(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for

position that such individual holds or desires." 42 U.S.C. § 12111(8). The Eighth Circuit articulated the following factors to consider when determining the essential functions of a position:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Heaser v. The Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001); *see also Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 680 (8th Cir. 2001). Ultimately, the plaintiff's work performance must "meet the employer's legitimate job expectations."[5] *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999).

There is no dispute that the essential functions of the job require driving a truck, repairing heavy machinery, and lifting up to 150 pounds. Plaintiff has on at least two occasions fainted or collapsed while working, and both times he had just finished or was getting ready to drive a truck. Plaintiff gave no indication that this problem was short term; the dump trucks driven by the plaintiff weighted 12.5 tons and sometimes with the attachments up to sixteen tons. Plaintiff drove ten to twenty trucks into the shop per night. The court finds that driving a truck is an essential part of plaintiff's job.

---

       the job;
       (iii) The amount of time spent on the job performing the function. . . .

29 C.F.R. § 1630.2(n).

   [5]The determination whether the plaintiff was a "qualified individual" must be made as of the date(s) of the challenged employment decision(s). *See Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1048-1049 (8th Cir. 1999). Further, the employee cannot rely on "past performance to establish that [h]e is a qualified individual without accommodation when the employer has produced undisputed evidence of diminished or deteriorated abilities." *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999).

9

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations. . . ." 42 U.S.C. § 12111(9)(B). However, an employer cannot be required to "change the essential nature of the job." *Mole,* 165 F.3d at 1218. For example, "[a]n employer is not required to hire additional employees or redistribute essential functions to other employees." *Id.; see also Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir. 1999). The statute stresses the importance of "the employer's judgment as to what functions of the job are essential." 42 U.S.C. §1212(8).

Initially, a plaintiff must prove that he informed the employer that an accommodation was needed.[6] *See id.* ("it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed"); *see Mole,* 165 F.3d at 1217 (employee has the initial burden of requesting accommodation). Then, the plaintiff "is only required to make a facial showing that a reasonable accommodation [was] possible." *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). If the plaintiff succeeds, "the

---

[6] After the employee informs the employer that an accommodation is needed, the "failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith." *Fjellestad,* 188 F.3d at 952.

10

burden of production shifts to the [defendant] to show that he is unable to accommodate the [plaintiff]." *Id.*

The record reflects that plaintiff's impairment prevented him from performing essential job functions. First, the court finds that plaintiff's impairment prevented him from safely driving vehicles. For this reason, plaintiff was unable to perform the essential function of operating certain automotive equipment. *See Lloyd v. Hardin County, Iowa,*, 207 F.3d 1080, 1084 (8th Cir. 2000) (employee's request to be assigned to a modified vehicle amounted to a reallocation of an essential function of the job). It is apparent from the job title and the written job description that driving vehicles is an essential function of the job. Plaintiff admits that he did not ask for a reasonable accommodation. Filing No. 21, p. 16, Depo. Lemm, 37:3-10, and 54:20-55:16. Plaintiff also admits there was nothing the defendant could have done to create a reasonable accommodation for him. *Id.* at 95:10-11. Finally, the court finds that because driving a truck is an essential part of this job and no evidence has been submitted that defendant could make a reasonable accommodation for plaintiff, that plaintiff is not qualified to perform this job. "Under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process." *Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 864 (8th Cir. 2006).

### 3. Adverse Employment Action

There is no doubt plaintiff lost his job. However, defendant argues it was not because of a disability, but because he could not perform the essential functions of his job safely. Again, the defendant has articulated a legitimate and nondiscriminatory reason for the discharge. Plaintiff has offered no evidence that such concern was merely a pretext

11

for intentional discrimination. Defendant believed that plaintiff posed a threat to himself and to others, and a reasonable accommodation would not suffice, and the law permits such a determination by the employer. 29 C.F.R. § 1630.2(r).

This court concludes that no reasonable jury could find that plaintiff was (1) disabled under the ADA; (2) a qualified individual under the ADA because of his inability to perform the essential functions of the job with or without accommodation; or (3) that a reasonable accommodation could have been made without changing the essential functions of the plaintiff's job. Accordingly, defendant's motion for summary judgment is granted.

THEREFORE, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment, Filing No. 19, is granted; and

2. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 19th day of March, 2007.

BY THE COURT:

s/Joseph F. Bataillon
Chief United States District Judge